RICHARDS, appellant, v. JUDD *et al.*

*Libel — examination of party as a witness — refusal to answer — striking out complaint.*

In an action for libel, the complaint alleged that the plaintiff was the proprietor and manufacturer of certain articles of medicine known as "Dr. Richau's Golden Remedies," of which the sales and profits were large; that the defendants had, in a magazine published by them, characterized his Golden Remedies as "nonsensical quackery," etc., and as valueless, and possessing no medicinal qualifications whatever. The defendants, in their answer, alleged that the publication was substantially true, and made with good motives, and for justifiable ends. The plaintiff, being examined by the defendants as a witness on their behalf, under an order of the court, was directed by the judge to state of what ingredients certain of his remedies were composed. He refused to answer, otherwise than by saying it was "a secret compound of various ingredients of great medicinal properties." *Held* that the answer was evasive, and that the court properly ordered the complaint to be stricken out and dismissed with costs.

APPEAL from an order of the special term, striking out the complaint and dismissing the same with costs, for the plaintiff's refusal to answer certain questions propounded to him as a witness pursuant to the order of the court. The facts are sufficiently stated in the opinion.

*John S. Walker*, for appellant. The questions were not involved in this issue and were immaterial. *March* v. *Davison*, 9 Paige, 580; *Swift* v. *Dickinson*, 31 Conn. 285; also cites *Ansen* v. *Tuska*, 19 Abb. 391; 4 Hurlst. & Norm. 146.

*Amos G. Hull*, for respondent, cites *Byrn* v. *Judd*, 11 Abb. N. S. 390; *Fetridge* v. *Wells*, 13 How. 396; 8 Simons, 479; 6 Beavan, 66; 13 id. 213; 11 N. Y. 347; 11 Abb. 157; 19 How. 530; 10 Pick. 9.

DAVIS, P. J.   The plaintiff alleges in his complaint, in substance, that he is, and has for many years been, the sole proprietor, owner and manufacturer of articles of medicine and merchandise, generally and publicly known as Dr. Richau's Golden Remedies, which he has for ten years last past manufactured and put up, and offered for sale and sold; and that, by means of extensive advertising and the good qualities, etc., of such Golden Remedies, he has secured large sales and profits. He also alleges that the defendants are publishers of a monthly magazine, known as the *Amerian Agriculturist*, and having a circulation, monthly, of two hundred and fifty thousand copies; that in November, 1872, the defendants published in their said magazine a certain libelous article in the following words:

"SUNDRY HUMBUGS. — Our newer readers keep inquiring about the trustworthiness of this, that and the other doctor for various diseases. We answer that every so-called physician, every medical institute, or college, or association, that advertises medicine or medical advice, by circular or otherwise, is a quack, in short, a swindle. The whole tribe of those who advertise 'marriage guides,' 'female medicines,' 'advice to the young,' 'errors of youth,' 'eye doctors,' 'ear doctors,' 'consumption curers,' 'cancer doctors or medicines,' etc., etc., are positively quacks and impostors, to whom it is unsafe to address even a letter of inquiry; also, the 'Golden Remedies,' inquired about by several, are nonsensical quackery.

"We have not room for a lot more of humbugs on hand, but will renew the war upon them in the next volume, and, as hitherto, we expect to shield at least all our readers from swindlers. and through them many other people."

The plaintiff alleged, also, "that the defendants by means of these words, published as hereinbefore set forth, insinuated and meant to be understood by those to whom it was published, and to the public at large, as charging the plaintiff with being a quack, impostor and

swindler, and that the said ' Golden Remedies,' manufactured solely by the plaintiff, were wholly valueless and useless, and possessing no medicinal qualifications whatever," and that by means of the publication the plaintiff has been injured in his reputation and in his business, and been deprived of custom and trade, and lost the sale of goods and profits which he would otherwise have made, etc., to his damage of $25,000.

The defendants in their answer, admit, in substance, that they are publishers of the *American Agriculturist*, and that in December, 1872, they published the article, under the caption of "Sundry Humbugs," above set forth. They allege, also, that the publication is substantially true, and was published with good motives and for justifiable ends. They also set out, *in extenso*, the circulars sent forth by the plaintiff with his "Golden Remedies," in which the plaintiff describes himself as a physician who has had a general practice in all parts of the world ; and aver various facts tending to show that the alleged medicines of plaintiff are valueless as remedies for disease, being compounds costing but a few cents per bottle, and selling at several dollars, which the public would shun if the constituent parts were known. The defendants propose in their answer to give evidence of all the various facts alleged, both in justification and in mitigation of damages.

Issue being joined, the defendants, upon affidavit, procured an order and summons for the examination of plaintiff as a witness on their behalf before the trial. On such examination the plaintiff testified that a bottle marked, "Dr. Richau's Golden Balsam, No. 2," was one of the medicines he advertises and vends to the public. He was then asked of what Balsam No. 2 was composed. He refused to answer the question on the ground that it was irrelevant, immaterial, and a secret in his trade. The judge directed the plaintiff to answer the question. He then answered, "It is a secret compound composed of various ingredients which possess great medicinal properties," and refused to state the names of the ingredients. He then gave evidence showing that he was not a doctor of medicine and had never received a diploma, and had not been engaged in a general practice of medicine in any part of the United States.

He then testified that he advertised "Dr. Richau's Golden Elixir de Amour, or. Elixir of Love," and on being asked "Of what is it composed ?" he refused to answer.

The court at special term, after argument, ruled that the plaintiff must answer the question which had been propounded, and, on the question being repeated to him, he answered: "It is a secret compound of various ingredients, which possess great medicinal properties;" and refused, absolutely, to give any other answer.

On presentation of these facts to the court, it was held that the answer was evasive; and the plaintiff, under the advice of his counsel, refusing to give any other answer, the court ordered his complaint to be stricken out, and dismissed with costs.

By the allegations of his complaint, the plaintiff had invited an issue as to the medicinal qualities and value of his golden remedies. The statement of the alleged libel, so far as it pointed directly to plaintiff or his remedies, was to the effect that his golden remedies are "nonsensical quackery," and it is chiefly of this statement that the plaintiff complains. The defendants undertake, by their answer, to show that this statement is true.

No one can read the circulars of plaintiff, as proved by himself on his examination, without observing the importance of the investigation sought to be made. It was competent to disprove the assertions of the circulars, and of the complaint, by ascertaining the ingredients of the several compounds, for the purpose of showing that they possess no such medicinal virtues as are claimed by plaintiff.

For instance, he asserts in his circular that his Elixir of Love 'is composed of the most powerful ingredients of the vegetable kingdom, harmless, but speedy in restoring healthy action." And again: "It is the fountain of youth to old age — the rejuvenator of pristine vigor in the young; to the barren women of our land it is a special blessing." Indeed, it is impossible to read the vulgar, and in many respects shameful, assertions and instructions that accompany the compounds of plaintiff, without being struck with the vileness of his impostures.

That he can bring an action of libel, for injury alleged to be done to his trade in his medicines by denouncing them as arrant quackery, and at the same time protect himself against exposure by claiming them to be valuable secrets, is a proposition that cannot be maintained. *Byrn* v. *Judd*, 11 Abb. N. S. 390; 11 N. Y. 347.

In the laudable exposure of such "humbugs" as the pretended medicines of plaintiff and others, the defendants take upon themselves great risks, and subject themselves to the annoyance of suits;

but I think they are not exposed to any danger that courts will interpose any shield for the protection of parties guilty of fraud and deception of the public.

If the plaintiff did not choose to try the question of the true character of his " Golden Remedies," he should have kept out of a court of justice. The order of the court below was correct, and should be affirmed, with $10 costs and disbursements.

DANIELS and DONOHUE, JJ., concurred.

*Order affirmed.*